Bank. Today when I get to sit with my brilliant colleagues Judge Wilson and Judge Ramirez, the newest member of the court who is already keeping us on our toes and making our work sharper and stronger. So I'm grateful to sit with both of them this week. We've got two cases today. We're going to lead off with 23-20318 Occidental Petroleum Corporation and Anadarko Petroleum Corporation v. Wells Fargo Bank. So Mr. Chemnitz, all right, step right up. May it please the court. The district court committed multiple legal errors that require reversal. They're all addressed in a briefing. I plan to highlight three today. First, the district court erred in treating an exchange of emails as a contract. Among other things, those exchanges were not supported by consideration. Second, the fact that Anadarko was the settler of a rabbi trust in question does not give rise to a viable contract claim. The law in Texas says that a trust cannot create a contract, and they are also dependent on that email exchange. Finally, even if the court did not err in finding liability, the theory of damages was flawed as a matter of law. The district court found that the evidence supported an agreement to reinvest. That makes sense because every part of the discussion was about selling and reinvesting money. But the court allowed only a damages theory that assumed the assets would be sold and That was an error. I'll start with the email contract because the communications between the parties were in response to an explicit request for input, and both parties discussed the exchange of communications as recommendations. There is no intent on the face of those communications to be bound. Even if Wells was asked to agree to the recommendation, even though Wells said it accepted the recommendation, The dialogue about a recommendation and the request for input is language that signifies one party holds discretion, which is the context in this case. This court has held that the business context informs the meaning of those words, and here that business context indeed amplifies that reading of this language. There's no dispute that the point of the rabbi trust was to put control of the investment decisions out of the reach of the settler and into the hands of Wells Fargo, and in that context it would be only natural to read those words, more natural to read those words as something other than an invitation to bind themselves. They are what they said they were, a request for input. If the court goes beyond that language as informed by the context, as the court in this case did, gathering bits of information from intrinsic sources, those are now questions of fact. And if a question of fact is used to support the question of formation, then we were entitled to every inference regarding that record. We were entitled to present to the jury that information and have them consider whether our witnesses were credible and whether the documents said what they mean. So because those documents and the plain meaning of those documents does not support an intent to bind the parties in a contract, the district court's judgment in this regard should be reversed and the summary judgment by Wells Fargo should be granted. If you find that it is based on these extrinsic facts, then at a minimum, the case should go back to the district court for a finer effect to determine whether the parties intended to be bound. But even if that record reflected an exchange of mutual, unambiguous promises, the email agreement would fail for a second reason, which is the lack of consideration. The consideration necessary to make those promises binding would require new undertakings, undertakings that were explicit at the time of negotiation and that were bargained for in order to induce Wells Fargo to undertake the obligations. None of that is present here. The list of items cobbled together by opposing counsel and by the court don't meet those criteria. It doesn't matter if after the fact, accidental claims that it would be impaired to bring a legal claim based on the right to substitute assets or the timing of the sale. That was not asserted and bargained for at the time. It was not part of the negotiation. So too is the fee agreement that the court relies on. There was no discussion of changing the fee agreement. The payments the parties received did not change at all, and so that is not valid consideration because there was no bargain for explicit exchange of obligations at that time. That agreement fails. The second agreement alleged is an agreement based on the trust agreement itself, and that alternative theory doesn't work for two reasons. First, the trust agreement does not give rise to contractual rights. That's Texas law. And second, even if it could, as it was construed, the contract at issue is tied inextricably to the email exchange and fails with the failure of that agreement. We start with Texas law, and Texas law is clear. The appellate court in Rochelle v. Wrights concluded this issue very directly. That case included the enforceability of an arbitration agreement that was contained in the trust document. The court, assessing that claim of a dispute between the beneficiary and the trust, asked whether there was a contract that would support enforceability of that arbitration agreement. The court went through all the analysis, looking at the restatement, the preference for legal and equitable rather than legal claims for trusts, and concluded under Texas law that a trust did not create contract rights. Full stop. To whom did Wells Fargo owe duties then? Wells Fargo owed duties to the beneficiaries under the trust. Even though Wells Fargo didn't pay them, even though Anadarko or Occidental could, I guess, take the monies back or have the right to this turn-back amount? They would have a right at the end of all benefits running clean. They would. If the benefits were exhausted, the residual would go back to Occidental or to Anadarko at the end. But in the meantime, the assets are held for the benefit of the beneficiaries at the point of the trust. That issue was discussed with the trial court in the context of the motions for fiduciary duty to dismiss the fiduciary duty claims. Didn't Wells Fargo represent to the court that they weren't fiduciary duty claims here? They were really breach of contract claims? So in that agreement, in that argument regarding fiduciary duty claims, Wells Fargo did argue that there were no fiduciary duty claims under the economic loss doctrine because of the presence of a contract. That claim, however, was not reached. That argument was not relied upon by the court. The court was explicit. When Occidental comes back and says, well, we'll assert your breach of contract claims, you said this ought to be. And then you say, well, no, no, they're not really contracts. There's no contract here. These would be breach of fiduciary duties. Is that not judicial estoppel? Yeah. We do not believe that judicial estoppel applies under these facts because the court's ruling in that motion explicitly did not reach the economic loss doctrine. Did Wells Fargo take the opposite positions, though? In the context of that motion at that time, Wells Fargo described the obligations that ran to Occidental as contracts. All right. And so then later, in the context of this case, Wells Fargo comes in and says, nope, no contract here. That is correct. How is that not inconsistent such that judicial estoppel would apply? Well, the argument below is very narrow. The judicial estoppel would only apply if the court relied on that argument and it was underpinned her agreement or her decision. So the party can take inconsistent, completely inconsistent positions, not in the alternative, completely inconsistent positions, and if the court doesn't happen to discuss that ground, it's okay? I think the courts that have applied estoppel in that context have applied it narrowly to avoid the circumstance that would occur here, a claim that does not exist at all going forward, and look to the reliance of the court on those statements to determine whether or not the party should be prevented from arguing the different position in a different context. Yes. And, you know, I think that's what happened here. I know the court later recites that it has believed the contract argument, but if you go back and read the decision that the court made after the arguments on fiduciary duty, two things are really clear. One, that she explicitly did not reach as premature. Well, but the district court then relied on the position that Wells Fargo took in the court's ultimate ruling. Did it not? It did not. No. The ultimate ruling is that it's premature to discuss the economic loss doctrine. So I'm not going to reach that question. It has no bearing on this opinion. The court only discussed whether or not Occidental was a beneficiary, and it went through a whole bunch of reasons why it looked at all the case law around it and reached the conclusion that because they were not a beneficiary, no fiduciary duty ran to them, which was consistent with, you know, a broad swath of law. At times, Wells Fargo had only talked about the narrow administrative duties that were in a contractual sense, and it has never argued, it has never suggested that the core duty here, the ability to reinvest or make investment decisions, was contractual or a duty that ran to Occidental or Anadarko in any form. And accordingly, we think that that claim then should be considered on its merits and that there is not a basis under Texas law for allowing that claim to go forward. But I would add, if that claim did go forward and there's a number of issues to address inside of it, that would be a claim under the trust agreement, and the claim under the trust agreement, the language of the trust agreement upon which they rely, is a duty to diversify. And so the only outcome of that claim would be a duty to diversify. And if that is the theory of liability, then it would have to follow through to damages. And the court should have allowed consideration of the diversification obligation in crafting the amount of damages. It did not. The court considered only a formula which assumed the stock would be sold on schedule discussed in January and held in cash until the period in March. But that's completely inconsistent, both with the discussion that the parties had about reinvestment, the court's own conclusion that an agreement was reached about reinvestment, that is the court's conclusion. But the court didn't go a step further and then try to apply the available information about reinvestment as it had been discussed to the calculation of damages. Instead, the ruling was to preclude any information, to consider any factual matters that showed that diversification was part of the process. And there was— Well, the diversification is not what caused the harm. I mean, in other words, diversification can happen over time. If you've got a large holding that's of one security and you need to sell it off in order to diversify, I mean, what Occidental and Wells Fargo agreed to do, which is to sell this over a period of days and sort of, I guess, dollar-cost average over 5 days or whatever it is, I mean, certainly holding the funds for a while before putting it into new shares could still be part of diversification. In other words, I guess, if you view it that way, the damages occurred when Wells Fargo didn't execute on the agreed plan. But under no conception of the plan did the parties conceive of selling and holding the cash throughout this entire period of time, which is what happened. Under any conception of the agreement, the email agreement or the trust agreement, reinvestment is part of that strategy. And so it is reasonable, at least for Wells Fargo, to be able to present to the trier of fact on what the but-for non-breach rule looks like. The but-for non-breach rule reflects diversification. And there's ample evidence in the record about that. And the finer facts should have been able to consider that. The ruling below prohibited it, prohibited the only conclusion that the cash would be however described. On whether the trust agreement is a contract or not, what's your response to the argument that Wells Fargo ought to be, judicially has stopped from even making the argument given certain statements made in the district court? Yeah. And again, I do not believe that we made any statements about the relationships being contractual that were relied upon by the decisions that the court made at that time. And I think that's this positive under the jurisprudence around estoppel, which is a harsh remedy that the courts apply narrowly. The two contexts in which contracts were described were the economic loss doctrine, and the court is explicit in her opinion that I'm not reaching that because it's premature. So all of that discussion is off the table. And then a long discussion we had about who is a beneficiary and who wasn't. At the very end of that discussion, we said there were very narrow administrative contractual obligations, which support the notion that they're not a beneficiary. The court wrote a lengthy opinion about that issue that discussed everything else, but nothing in that opinion was at all dependent or reliant upon the existence or absence of a contract. It was totally independent of that. So I appreciate that those words were said at a time when no contract claim was lodged. William Darko was not a party to the case, but those words and the saying of those words did not prejudice anybody going forward in the case because there's no evidence in the opinion that the court issued that it was relying on those arguments in making the decision. And that's what matters. The opposite result is that the law in Texas is plain, it's clear that there is no contract rights that emerge from a trust. And therefore, that is a claim that should not exist as a matter of law. It would be. So is it your view that you can make statements that are contrary to a position now taken so long as those statements weren't relied on by the court below? Yeah. Yes. Yes. I mean, obviously, it should be avoided and that the context should have been examined with a longer view at that time. But the jurisprudence around the use of judicial estoppel is limited in that way. It looks for avoiding those results if there's no reliance on those statements. And I know the judge took the view that we had said that and it mattered to her. If you go back and look at that opinion, it's not there and that should matter to you. OK. The final point I would make with my remaining time is just to remember in the context of that agreement, the alleged trust agreement, is that it is connected with the agreement to sell shares in the emails. The court found specifically that the result of the reason that it was breached is because we did not do what was agreed to in those emails. So the two things are combined together. Remember also that the email communications were between Wells Fargo and Occidental. The trust agreement is between Wells Fargo and Indarco. That agreement fails because you cannot combine those two pieces into one agreement. Thank you. All right. Thank you. Ms. Patrick, step right up. Good afternoon, Your Honor. Good afternoon. Good afternoon, judges. May it please the court. The Honorable District Judge Lee Rosenthal appropriately granted summary judgment in this case because the only questions raised on the record were legal. Applied to undisputed facts. That's what the summary judgment rule is for. As this court emphasized in its en banc decision in Little against Liquid Air Corporation, summary judgment is not a disfavored procedural shortcut. Rather, as the Supreme Court held in Celotex, quote, the plain language of Rule 56 mandates the entry of summary judgment when no genuine issue of fact exists to establish an essential element of a party's case. That is this case. Nothing about what really happened here is disputed in the record. Wells Fargo stipulated the truth of most of the events and the record contains no other evidence to dispute what actually happened. It's straightforward. In December of 2019, Occidental Petroleum, acting on behalf of its newly acquired subsidiary Anadarko Petroleum, agreed in writing with Wells Fargo that on five specific days in January in equal and specific amounts each day, Wells Fargo would sell 1.9 million shares of Occidental stock held by Wells Fargo in a rabbi trust. What exactly did Occidental agree to do? Occidental agreed to do several things, but I think it is equally important to note before I get into that, that Anadarko had an independent right to enforce the trust agreement and that agreement and Anadarko paid consideration, paid commissions, paid brokerage fees associated with these sales. What Occidental did independently to provide consideration for its right to enforce the liquidation agreement was to develop the plan of liquidation, which Wells Fargo was incapable of doing, and assure Wells Fargo that if Wells Fargo sold as Occidental asked it to agree to do, Occidental would not object to that. Occidental had no obligation to provide that consent, nor importantly did Anadarko under the trust agreement. But Wells Fargo urgently wanted that consent because Occidental was a top 50 client and it wanted assurance that it was not going to anger this client. And so Judge Rosenthal correctly found that both parties, Wells Fargo for its part and Occidental and Anadarko on their part, minimized risk for themselves by agreeing to liquidate this massive concentrated block of stock in an orderly way on these days. Wells Fargo got the assurance that Occidental and Anadarko would not later contend that they had acted imprudently in selling the stock. But they didn't have to do that. In other words, it doesn't really add anything, set the trust agreement to the side. This email exchange was completely gratuitous. I disagree, Your Honor. Wells Fargo had discretion. They did. They were charged with managing the investments. They were. They clearly could have come up with a liquidation plan. I mean, you said they couldn't have done it without Occidental's help. Evidently not. They were unable to do that. They asked for Occidental's help. Sell consecutively over five days. I mean, this wasn't like rocket surgery, was it? Apparently for Wells Fargo it was. Well, set aside what their conduct was. Let's go back to the agreement. Yes. The purported agreement in these emails. I mean, I'm just struggling to find what Occidental or Anadarko did or contributed that makes this more than a gratuitous promise by Wells Fargo just to consider their input. With regard to the emails, with regard to the email agreement, Your Honor, here's what I think about that. I think you cannot divorce that from the context of the reality that Wells Fargo was extremely anxious to get their approval, which they did not have to provide. There was no underlying obligation on the part of Occidental under the trust agreement, because it's not a party, and on the part of Anadarko under the trust agreement, because it's divested of control, to provide Wells Fargo with assent, assurance, consent to Wells Fargo's exercise of duties. But Wells Fargo sought that. So by seeking out, by undertaking the obligation unilaterally, I'm just struggling. How is there a bilateral contract that's thereby created? Your Honor, I think the answer to that is in the science case, which we've cited in our brief. While a trustee has, where a trustee has discretion, for example, to distribute income as and when it wants, when it agrees to make a specific income distribution on a particular day, as Judge Rosenthal held, it then binds itself to perform and constrains its exercise, its ability to change its mind or exercise its discretion otherwise. Do we go back to the trust agreement, though, for the underlying? I think so. I think you look at the party's obligations. Consideration is provided in Texas, and I should note, as the Court knows, that consideration is a weakish read in Texas. It's really mutuality of obligation. But at the point at which Wells Fargo decides to sell, if Wells Fargo just sold the stock, it just sells the stock. But when it asks Anadarko and Wells Fargo and Occidental to agree to sell on these particular days, Wells Fargo wants something. It wants their consent, which they are not obliged to provide under the trust agreement, and they do. That is consideration. So I think there is ample consideration for the liquidation agreement, but there is abundant consideration under the trust agreement as well. So you're saying that Wells Fargo had the discretion to sell these shares, but it gave it away essentially because it wanted Occidental's consent, and that was the consideration? Correct. But if the trust agreement forbids Wells Fargo from delegating its responsibilities as to management or control, how could it provide or give away that discretion? I don't see the trust agreement as forbidding Wells Fargo from delegating its authority, nor do I think it delegated its authority. I think what Wells Fargo did here is plain in the record. It had a concentrated block of stock. It was worried about it. It felt it needed to sell it. It was unsure how to do that. As incredible as it is, that is the record here. A very large financial institution had an employee as an investment advisor on a large account who did not know how to do this. And so she sought the help of her clients at Occidental and Anadarko to advise her how they preferred to have the stock sold. And they wanted it sold in January when the market would be stable, when it could be done in a way that was prudent, would not move the market. That's not gratuitous. Wells Fargo can ask for advice, but when it specifically asks for that consent and agrees, under the trust agreement, it constrains its discretion. As Judge Rosenthal said, having agreed to sell in that manner on that day because it was prudent to do so under the agreement, it constrained itself to sell in any other way. And so it was bound to perform. So I think let's talk specifically about the trust agreement because I do think it is the foundational understanding here it is unquestionably a contract. I have to say the trial lawyer in me cannot resist the temptation to hold it up for you. It is 30 single-spaced pages. It is called a benefits trust agreement with Anadarko Petroleum Corporation. It contains detailed and mutual obligations between Anadarko and Wells Fargo, including who owns the assets in the trust, Anadarko, how they will be invested, and by whom. What Wells Fargo will be paid, including a base obligation to pay additional brokerage fees and commissions when securities are sold. And the record is undisputed here that when Wells Fargo partially performed, as we concede that it did, Anadarko, in fact, paid those brokerage commissions. They are in the record. So all of the elements necessary to establish a contract here were established as to the trust agreement. The brokerage commissions went to Wells Fargo? They did. What do you do? You've anticipated this question, no doubt. What do you do with the Texas law that suggests trust agreements are not contracts? I do not think that is a correct representation of Texas law, Judge Wilson. If you were to look, for example, at, I think it's Gannon against Baker, which is 807 Southwest 2nd 793, that is a lengthy and detailed decision, but it recognizes the right of a shareholder that is party to a voting trust to sue for breach of the trust agreement and describes a trust agreement as a written contract. Even Rochelle against Ruiz, which my colleague mentioned, and is a matter of some controversy here, enforced against a non-signatory beneficiary the settler's mandate in a trust instrument that disputes regarding the trust be arbitrated because it was a written contract. So I believe that Texas law does recognize trust agreements as written contracts, and the science decision clearly recognizes that where a trustee agrees to exercise its discretion in a particular way, that is enforceable as a contract. We've heard counsel officers say that the duties Wells Fargo owed were owed to the beneficiaries of the trust. So I take it you take issue with that. Some duties were owed to the beneficiaries of the trust, but they are limited. The bulk of the duties under the trust instrument are owed to the settler. Those duties include detailed obligations to account, obligations to invest, obligations to receive reversionary requests. I would note, moreover, that Wells Fargo repeatedly invokes its own claim discretion as trustee under in this matter as a defense, but that discretion doesn't emanate from the ether. It emanates from the written trust agreement. Does Wells Fargo, let me posit a counterfactual just to illustrate the point. Wells Fargo concedes. Anadarko could remove it as trustee if it wanted to do that. That's what section 9.1 of the trust agreement record of 1588 says. Wells Fargo makes that concession in its reply at 12 to 13. Does Wells Fargo now suggest that it was free to refuse to turn over the trust proceeds to a new trustee if it received a letter removing it? And does it genuinely suggest that Anadarko was powerless to enforce that right in court, in contract, or to enforce the right to an accounting under section 5.4, the right to receive investment reports under 5.5, the right to compel Wells Fargo to pay the actual benefits that it owes under section 7. The law is equally clear that beneficiaries, that is the highly compensated employees who are beneficiaries of this trust, do not have the right to enforce any of those base duties to diversify investments, to account to Anadarko for the shares. None of it. That is the holding in Smith against Pennington. It is well recognized in the context of ERISA litigation. Beneficiaries have the right to receive the distributions they're entitled to under the trust, but it is the settlor under a rabbi trust that owns the contract and has the right to enforce it. So said the Seventh Circuit, for example, in Bank of America against Muglia. So I think there is no argument here, that the trust agreement is not a contract, even assuming that Wells Fargo was free to make that argument. But it is not. What about judicial estoppel? I mean, you heard what counsel opposite said. The district court didn't rely on that argument. So therefore, judicial estoppel doesn't apply. It would be news to, I think, Judge Rosenthal, and it is certainly news to our clients that Judge Rosenthal did not rely on that representation because she dismissed our tort claims based on the representation that the party's duties were defined by a contract. Judge Rosenthal, in fact, specifically asked Wells Fargo's counsel to identify what contract duties she was talking about in the argument. And Wells Fargo's counsel responded, quote, the duty would be the contractual duties that are set forth in the trust agreement. Based on that representation in the record at 786, you will see Judge Rosenthal dismissed our tort claims, holding that the only claim was in contract. They benefited from that. They are barred now from reversing course and claiming it is not a contract. And independently, all of the elements of a contract are satisfied here. Well, I mean, I guess playing the devil's advocate a little bit, just because the district court said, well, these aren't fiduciary duty claims. I'm going to dismiss them. Any claims would be in contract. Doesn't mean the contract claims are viable. Well, I think it bars them from claiming they're not a contract. If you obtain the dismissal of tort claims on the ground that the only duties are in contract, you cannot then turn around and say there's no contract. So this isn't the case where different arguments were lodged and it just so happens both sets of claims were doomed. Your position is they argued, no, these are contract claims. And then when the contract claims were asserted, we'll give you what you asked for. Nope, these are not contract claims. That's right. That's right. And that's why it's the classic case of judicial estoppel. And candidly, I think it is unjust to Judge Rosenthal for Wells Fargo to reverse course that way. And you will see in the summary judgment opinion, her take note of that reversal, of course, to point out that indeed, having conceded that the trust agreement was a contract, Wells Fargo is barred from arguing it's not. But she also independently goes on to find, as I've just demonstrated, as the written agreement demonstrates, that it was a contract. I think I should make one other point on the trust agreement, which is it is a written agreement signed by the parties. And in Texas, as you know, the law presumes consideration for a written agreement and presumes mutuality of obligation. It was, therefore, Wells Fargo's burden as the party seeking to avoid summary judgment to come forward with competent evidence to refute it. And of course, it did not. You cannot refute this written agreement, says what it says, does what it does, nor can you refute that on this record, Wells Fargo agreed to exercise its discretion in a particular way, binding it under science and Anadarko paid the commissions for it to do so. And Wells Fargo wants to say, well, there was a pre-existing obligation to pay commission under the trust agreement. Well, there was not a pre-existing obligation to pay commission for these transactions. Trust agreement was signed in 2008. The obligation to pay the commission arose under the trust agreement, but it is present consideration for Wells Fargo's agreement to perform to hold otherwise would be to allow every party sued for breach of contract to say, well, you agreed to pay me. So that's already an agreement and it doesn't function as consideration. That's clearly not the law. Let me address one other couple of other points quickly. On the question of reinvestment, which Wells of which Wells Fargo makes much in its brief, no part of the liquidation agreement, no part of the trust agreement specified any specific plan for the reinvestment of the proceeds. It's simply not there in the record. Texas law also forecloses the argument made by Wells Fargo, which speculates on what the result of reinvestment might have been, because there was no showing of that. In fact, Wells Fargo admitted below in the record at 3921, that the value of any reinvestment portfolio, including assets purchased with the proceeds of the share sales, could not have been foreseeable. And of course, the measure of damages in Texas is measured as of the date of the breach. Here, the date of the breach was January 20th, the last day on which Wells Fargo catastrophically failed to sell the shares as it promised. That is the benefit of the bargain. And there is no evidence that the October 24th proposal of which contemplated reinvestment, that any of that actually ever happened. Right? This is the classic case. In fact, it's very much like Little, where Wells Fargo posits, well, we could have done this and we might have done that. And if we had done that, it would be this. But there is literally no evidence from its employees that they actually reinvested any proceeds, or that there was any concrete plan to do so. In fact, their witness testified that it was not the final plan. And so there is no record evidence to support it. And of course, even if that evidence, even that evidence is incompetent legally, it is post-breach. The breach is the date on which damages are measured. That is a question of law. It's simple math. Wells Fargo does not dispute that math. But fundamentally, Texas law would prohibit a jury from engaging in speculation and conjecture about a series of unprovable unknowns, which Wells Fargo concedes were not foreseeable, about what might have happened if it had actually reinvested these proceeds, which it did not. All right, Ms. Patrick, thank you very much. Thank you. Mr. Kimnitz, you have reserved four minutes. I'll go quick. So first on the issue of estoppel, I would refer you to the Condier case. And the quote from this court there is that, the party to be estopped, us, must have convinced the court to accept the previous position. So it is not based on our conduct. It's based on the results, right? And if you look at the opinion, the court is crystal clear on the face of its opinion that it is choosing not to reach the question of economic law's doctrine. You can read the opinion. All of her details are in there about why she reached the opinion that they were not entitled to be beneficiaries None of it has anything to do with the existence of a contract. That is dispositive, notwithstanding a view she may take later. And again, the jurisprudence is to construe that doctrine narrowly. Second, the documents are very clear about the question of whether there was going to be action by us or whether we were somehow dependent on Occidental to give us a schedule. The document on page 892, the email that starts all of this says, if you don't give us some input, we'd like your input, but if you don't give it to us by this date, we're moving forward. So the record is pretty clear that we were perfectly happy to move forward with liquidation on our own. The suggestion that their conversation with us, that their recommendation to us somehow provides consideration because they would lose the ability to object is hollow. First, they had no right to input. We were ready to go forward without them and we would have. They had no right to input, so they had no legal right to give away. Second of all, it was not bargained for. It must be explicit and bargained for. There must have been a dispute live about the schedule and we must have compromised that in exchange for the agreement for this to have been binding. There was no consideration. I think if you look at the science case, you will see that the parties knowingly changed their position in that case. There was an exchange of promises. It is not like this case. The facts of that case would separate it from this case. Opposing counsel argues that the bulk of the duties in this case ran too accidental. That's not true. The court considered all that in the context of the fiduciary duty opinion. One by one went through it and concluded that that was not the case. They were not a beneficiary. Most importantly, the very right at issue here, this question about diversification, is the core allocation of responsibility that makes a rabbi trust a rabbi trust. If you do not externalize that control, you don't have a trust. So if you reverse that in the form of a contract agreement, then you are giving back control indirectly over that decision. And that is antithetical to the very purpose of the trust and the reason that the parties created it. The suggestion that there is no clarity in the record about the plan to reinvest is belied in a number of ways. Most importantly, the district court found, in black and white, unambiguously, the record supports an agreement to reinvest. Nonetheless, the decision was because it wasn't specific as to dates. You couldn't go forward. Let's add that to the complaint we hear now, that it's not what we actually want. Well, all of the stock wasn't sold, so all of the money wasn't there. So you don't know what we would have actually done. But this court's guidance on that is clear. That's the any case, ENI, it's an oil exploration case. And they say, we're sending this case back because the trial court based it on what actually happened. This boat never went out again. We didn't use it. So that's how we measure damages. The question is, what could have happened? What was supposed to happen in the non-breach world? In a non-breach world, where there's an agreement to reinvest or a trust agreement that requires you to diversify, the non-breach world is diversification. Question back on estoppel. Ms. Patrick noted during her time that the reason Judge Rosenthal dismissed their tort claims was because of the assurances from your side about all this sounding in contract. Yeah. So review the court's opinion on that motion. And the reason that her tort claims were dismissed is because they're not a beneficiary. That's why the court dismissed those claims. We argued that the presence of a contract, which is how we described the trust agreement at that time, precludes a duty under the Economic Loss Doctrine. You can't have both a contract. We said that we did say that. But she said, you're wrong. I'm not reaching that. I'm not going to analyze whether or not there's a contract here that would prohibit a fiduciary duty. So the standard articulated about whether or not there was actual reliance is not met categorically in the face of that opinion. All right. Well, the court is grateful to both of you. Thanks for the able argument. And the case is submitted. Yes, please.